UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EDWARD GAWLIK, on behalf of himself and all others similarly situated, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 25-cv-10615-ADB |
| FOODPREP SOLUTIONS LLC, | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Edward Gawlik ("Gawlik") brings this action against his employer, Defendant FoodPrep Solutions LLC ("FoodPrep"), alleging that FoodPrep failed to pay him and others overtime as required by law.[1] Now before the Court is Gawlik's motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b). [ECF No. 19]. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Facts

On a motion for conditional certification of a collective action, the Court relies "on the pleadings and any affidavits which have been submitted," Cunha v. Avis Budget Car Rental, LLC, 221 F. Supp. 3d 178, 180 n.1 (D. Mass. 2016) (quoting Trezvant v. Fidelity Emp. Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006)), and, in its discretion, "other limited evidence,"

---

[1] Gawlik also asserts an individual claim not at issue here.

Waters v. Day & Zimmermann NPS, Inc., 23 F.4th 84, 89 (1st Cir. 2022). The Court "assumes all non-conclusory facts alleged by plaintiffs to be true," Cunha, 221 F. Supp. 3d at 180 n.1.

FoodPrep is a business that provides cutlery exchange services and sells food equipment. [Compl. ¶ 6];[2] [ECF No. 3 ("Answer") ¶ 6]. For its cutlery exchange services, FoodPrep employs Route Sales Representatives ("RSRs"), who "deliver[] sharpened cutlery to . . . and retriev[e] dull cutlery from [its] customers using company vehicles." [Answer ¶ 24].[3] Over 150 different people have been employed as RSRs since 2022, [ECF No. 24-1 ¶ 6], including Gawlik, [Answer ¶ 17], who works at a Burlington, Massachusetts, facility with several other RSRs, [id. ¶ 18].

Although he was later reclassified and now receives an hourly wage with overtime pay, from January 2022 to September 2024, FoodPrep paid Gawlik "on a salary plus commission basis," meaning he did not receive overtime pay. [Answer ¶¶ 29–30, 34–36]. Gawlik alleges that during that time, he worked an average of sixty hours per week but was only paid for forty. [Compl. ¶¶ 30–31]. As relevant here, Gawlik alleges that other RSRs were also classified as salaried employees and therefore exempt from overtime prior to September 2024, [id. ¶ 33], which resulted in them being underpaid for work in excess of forty hours per week, [id. ¶ 32]. FoodPrep denies this. [Answer ¶¶ 30–33].

**B. Procedural History**

Gawlik filed his complaint in Massachusetts state court on February 3, 2025. [ECF No. 1 at 7]. FoodPrep removed to another session of this Court on March 17, 2025, [ECF No. 1], and

---

[2] Pages 10 through 19 of Defendants' notice of removal, [ECF No. 1 at 10–19], contain the operative Complaint, which the Court cites as [Compl.] for ease of reference.
[3] Though RSRs' title includes the word "sales," cf. [ECF No. 24 at 6 (highlighting that fact)], the record currently before the Court does not contain any evidence of duties performed by RSRs apart from retrieving dull cutlery and delivering sharpened cutlery.

answered the same day, [ECF No. 3]. On October 21, 2025, Gawlik filed the instant motion for conditional certification, [ECF No. 19], which FoodPrep opposed on November 18, 2025, [ECF No. 24]. On June 24, 2026, the action was reassigned to this session. [ECF No. 31].

## II. LEGAL STANDARD

A provision of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, authorizes an employee to bring an action on behalf of "other employees similarly situated," but to join the action, other employees must "give[] . . . consent in writing." 29 U.S.C. § 216(b). FLSA collective actions are thus different from class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure in two relevant aspects. First, the FLSA "collective action is . . . a kind of mass action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases." Campbell v. City of L.A., 903 F.3d 1090, 1105 (9th Cir. 2018) (citing Abraham v. St. Croix Renaissance Grp., L.L.L.P., 719 F.3d 270, 272 n.1 (3d Cir. 2013)). Second, because the action is little more than an assembly of individual cases, would-be plaintiffs need to "affirmatively opt in to the joint litigation," id. at 1100 (emphasis added). Accordingly, for the FLSA collective-action mechanism to function, similarly situated plaintiffs must be made aware of the ongoing action and given the opportunity to assert their own claims.

The FLSA, however, "does not prescribe . . . [a] proceeding" to determine whether similarly situated would-be plaintiffs exist. Campbell, 903 F.3d at 1100. Nor does it outline a "mechanism for providing notice" to potential plaintiffs. Kwoka v. Enter. Rent-A-Car Co. of Bos., LLC, 141 F.4th 10, 21 (1st Cir. 2025). Accordingly, "much of collective action practice is a product of interstitial judicial lawmaking [and] ad hoc district court discretion." Campbell, 903 F.3d at 1100. "While the First Circuit has not adopted a specific procedure, the Second, Ninth, Tenth, and Eleventh Circuits have endorsed the so-called Lusardi two-step approach." Cao v. Hungry Pot Dartmouth Inc., No. 24-cv-11797, 2026 WL 1295571, at *2 (D. Mass. May 12,

2026) (first citing Richards v. Eli Lilly & Co., 149 F.4th 901, 907–08 (7th Cir. 2025); and then citing Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)), and that approach has been applied by a majority of district courts in the First Circuit and beyond, see Trezvant, 434 F. Supp. 2d at 43.

The two-step approach bifurcates the collective action into an initial notice phase and a subsequent final decision on certification. In the initial step, the Court conducts "a 'lenient' review of the pleadings, declarations, [and] other limited evidence, to assess whether the 'proposed members of a collective are similar enough to receive notice of the pending action.'" Kwoka, 141 F.4th at 22 (quoting Waters, 23 F.4th at 89). If the plaintiff musters "'some factual support'—as opposed to mere allegations—that the potential plaintiffs are similarly situated," the Court will conditionally certify the class and "facilitate the process of sending notice to others who may be similarly situated." Cunha, 221 F. Supp. 3d at 181–82 (quoting Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10, 16 (D.P.R. 2005)). Then, "following notice and discovery, the employer may move to decertify the class, at which point 'the court engages in a more rigorous review to determine whether the plaintiffs are, in fact, similarly situated.'" Cao, 2026 WL 1295571, at *2 (quoting Richards, 149 F.4th at 907).

## III. DISCUSSION

Gawlik's FLSA claim derives from "the general rule that employees must be compensated at a rate not less than one and one-half times their regular rate of pay for all hours in excess of 40 hours," De Jesús-Rentas v. Baxter Pharm. Servs. Corp., 400 F.3d 72, 74 (1st Cir. 2005) (citing 29 U.S.C. § 207(a)(1)). That rule does not apply to certain exempted positions, and whether a position is exempt turns on a fact-specific analysis of the work performed and the qualifications required. See 29 U.S.C. § 213(a)(1).

Concerning conditional certification of overtime-classification collective actions, whether a proposed collective merits conditional certification turns on whether employees are "similarly situated" with regards to factors such as title, job responsibilities, work location, and pay provisions, including "designation as exempt from overtime requirements." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 160 (S.D.N.Y. 2014). "[T]he mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' . . . ." Jenkins v. TJX Cos., 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012) (quoting Vasquez v. Vitamin Shoppe Indus. Inc., No. 10-cv-08820, 2011 WL 2693712, at *4 (S.D.N.Y. Jul. 11, 2011)). Rather, a plaintiff seeking conditional certification must establish both that such a policy existed and that other employees "primarily performed non-exempt tasks." Id. at 324.

Here, in addition to sharing a title, RSRs appear to have had substantially similar primary responsibilities during the relevant time period. The parties agree that RSRs' "duties include . . . delivering sharpened cutlery to . . . and retrieving dull cutlery from [FoodPrep's] customers using company vehicles," [Answer ¶ 24], that RSRs "begin their day at various depots and hubs where they locate cutlery to be loaded into their vehicles and ultimately delivered," [id. ¶ 22], and that the position requires RSRs to be "able to lift up to 50lbs.," [id. ¶ 23]; and generally speaking, FoodPrep speaks of the RSR role as one with standard characteristics, e.g., [id. ¶ 23 (describing a requirement "for the Route Sales Representative Position" generally)]; [id. ¶ 21 (describing "Route Sales Representatives' duties" generally)]. FoodPrep suggests that the above list does not exhaustively describe RSRs' responsibilities or qualifications, see [id. ¶ 21], asserts the existences of minor differences in their responsibilities, [id. ¶ 27 ("[S]ome, but not all,

[RSRs] return to a hub or depot to unload dull cutlery.")], and challenges the paucity of Gawlik's evidence, see [ECF No. 24 at 4–8], but it does not provide any evidence to contradict the conclusion that the RSR position generally resembles the role held by Gawlik. On the contrary, an affidavit of FoodPrep's Director of Cutlery Operations, who "manage[s] the route operations side of FoodPrep's business nationwide," suggests that the primary function of RSRs within FoodPrep's business is "conducting . . . routes and serving FoodPrep customers." [ECF No. 24-1 ¶ 4].

Similarly, though the record is minimal at this early stage, the existing evidence tends to corroborate Gawlik's conclusion that RSRs were treated uniformly with respect to their overtime classification, and this does not seem to be seriously disputed by FoodPrep. Gawlik avers that by virtue of his own interactions with unnamed other RSRs, he "came to understand that FoodPrep compensated every [RSR] on a salary basis [without overtime] until in or around September 2024." [ECF No. 20-1 ¶ 21]. He also provides a series of screenshots of job postings that he contends corroborate that conclusion. See [ECF No. 20 at 7–8 (discussing job postings)]. The job advertisements' descriptions of pay, though hardly comprehensive, do tend to suggest that RSRs were paid a salary before September 2024 and an hourly wage thereafter. Compare, e.g., [ECF No. 20-2 at 25 (March 2023 posting listing "Salary: $45,000 - $60,000" and "Supplemental pay types: Commission pay")], with [id. at 39 (August 2025 posting providing "Pay: From $28.00 per hour")]. Finally, though FoodPrep has been careful not to confirm or deny whether the compensation structure that was applied to Gawlik was applied to other RSRs, its filings suggest that RSRs have uniform responsibilities and fill a standardized role within FoodPrep's organizational structure, see [Answer ¶¶ 8–9, 21–22, 24, 27]; [ECF No. 24-1 ¶¶ 4–

5], and in the absence of any evidence to the contrary, that treatment supports the inference that RSRs were also classified consistently for compensation purposes.

That said, although Gawlik has provided some evidence that RSRs shared similar job duties and were uniformly classified as non-exempt, he has not provided any evidence that other RSRs actually worked overtime outside of his own firsthand knowledge of the Burlington, Massachusetts location. "For a class to extend beyond the named plaintiffs' own work location, they must demonstrate that 'employees outside of the work location for which the employee has provided evidence' were similarly affected by the employer's policies." Dyse v. HealthAll Consulting, 433 F. Supp. 3d 35, 40 (D. Mass. 2020) (quoting Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003)) (finding that plaintiff had failed to show the existence of similarly situated employees at locations outside of her own). Recovering under a misclassification theory requires the existence of actual "unpaid overtime compensation," 29 U.S.C. § 216, and even conditional certification of a misclassification class must be supported by material evidence that other employees actually worked overtime, see, e.g., Jeong Woo Kim v. 511 E. 5th Street, LLC, 985 F. Supp. 2d 439, 448 (S.D.N.Y. 2013) (noting affidavit of another employee "who claims to have regularly worked 44 hours each week, but to have been paid for only 40 hours"); Meyer v. Panera Bread Co., 344 F. Supp. 3d 193, 203 (D.D.C. 2018) ("[Plaintiffs] have further presented evidence that assistant managers regularly worked more than 40 hours per week."); Smith v. United States, 163 Fed. Cl. 155, 170 (2022) (collecting declarations by members of proposed collective stating that they "routinely worked overtime hours"). At this stage, a plaintiff's burden is not high, "but the standard of review is not invisible." Jiang v. Kobe Japanese Steakhouse, Inc., No. 22-cv-11867, 2024 WL 4872395, at *10 (D. Mass. Nov. 22, 2024) (citation modified) (quoting Burns v. City of Holyoke, 881 F.

Supp. 2d 232, 234 (D. Mass. 2012)). Without any evidence that employees at other FoodPrep locations were subject to similar conditions, including working overtime, the Court "cannot justify certifying a class of plaintiffs, likely numbering in the hundreds, on the basis of such thin factual support." Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008); see also Cao, 2026 WL 1295571, at *3 (denying certification where motion was supported only by an affidavit that was not sufficiently specific).

If Gawlik wants to include RSRs at facilities other than Burlington, he must allege more specific facts, corroborated by at least some evidence beyond the barebones allegations currently before the Court, demonstrating that RSRs at other facilities "were similarly affected by [FoodPrep's] policies." Dyse, 433 F. Supp. 3d at 40; see Travers v. JetBlue Airways Corp., No. 08-cv-10730, 2010 WL 3835029, at *3 (D. Mass. Sep. 30, 2010) (finding "no evidence in the record that [employees] at [locations] outside of Boston were paid below federal minimum wage as tipped employees"). Gawlik does not specify any other facility at which employees worked overtime or provide any basis apart from his own unsubstantiated "information and belief" for the conclusion that RSRs worked overtime. Compare [Compl. ¶ 32 ("Upon information and belief, all RSRs worked more than forty (40) hours each week.")], with [ECF No. 20-1 ¶¶ 20–26 (summarizing Gawlik's conclusions based on vague "opportunit[ies] to interact with other [RSRs]" but failing to specify when or how he interacted with them, which facilities they worked at, or whether they ever worked more than 40 hours per week)]; [ECF No. 20 at 9 & n.8 (arguing that RSRs were not paid "overtime for hours worked more than forty in a workweek" but not that any RSR, apart from Gawlik, actually did work more than forty hours per week)]. The Court can find no case where nationwide certification was granted without any evidence that other members of the putative collective worked overtime. See, e.g., Dyse, 433 F. Supp. 3d at 40

(declining to conditionally certify nationwide class when there was no evidence in the record that employees outside of one location "were subject to similar conditions and operated under a similar compensation scheme"); Kaynaroglu v. Avis Budget Grp., Inc., 773 F. Supp. 3d 169, 192 (D.N.J. 2025) ("Plaintiffs and Opt-in Plaintiffs also describe repeatedly working more than 50 hours per week and being told the role required 'mandatory overtime hours' . . . ."); Stevens v. HMSHost Corp., No. 10-cv-03571, 2012 WL 13098466, at *2 (E.D.N.Y. June 15, 2012) (citing Jenkins, 853 F. Supp. 2d at 322–23) (holding that to obtain conditional certification of a class of employees "who, though classified as exempt, nevertheless performed primarily non-exempt work . . . the testimony of the named plaintiff alone will be insufficient and must be supported by other plaintiffs and opt-ins"). Nonetheless, given the fairness and efficiency rationales in favor of early certification, the Court will give Gawlik leave to renew his motion as to the nationwide class within twenty-one days, supported by a more robust evidentiary record—or to proceed with this action as to the Burlington location only.

## IV. CONCLUSION

For the foregoing reasons, Gawlik's motion for conditional certification, [ECF No. 19], is **GRANTED IN PART** as to the Burlington, Massachusetts, facility, and **DENIED IN PART** with leave to renew within 21 days, as to the remainder of Gawlik's proposed collective. If Gawlik renews his motion, the Court will resolve that motion before deciding how notice will be provided to the collective. If Gawlik does not renew the motion, the parties are instructed to file a joint proposal concerning notice to Burlington RSRs within 14 days after Gawlik's election not to renew.

**SO ORDERED.**

September 24, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE